IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **EFFERMAN ZYMBLIS MOORE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 2:14-CV-00950-RDP |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of the Social** } | |
| **Security Administration,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OF DECISION**

Plaintiff Efferman Moore brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the parties' briefs, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on December 15, 2010. (Tr. 77–78, 151–58). In both applications, Plaintiff alleged disability beginning May 1, 2008.[1] (Tr. 77–78). Plaintiff's applications were initially denied by the Social Security Administration ("SSA"). (*Id.*). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 91–92). The request was granted and a hearing was held on July 13, 2012 in Birmingham,

---

[1] In a letter dated July 18, 2012, Plaintiff moved to amend his onset date of disability to May 1, 2009; the ALJ granted that request. (Tr. 19).

before ALJ Debra H. Goldstein.  (Tr. 32–68).  At the hearing, Plaintiff and Vocational Expert John M. Long, Jr. ("VE") each testified.  (*Id.*).  In her decision, dated August 24, 2012, the ALJ determined that Plaintiff has not been under a disability within the meaning of Sections 216(i). 223(d), and 1614(a)(3)(A) of the Act since May 1, 2009.  (Tr. 19–27).  On November 23, 2012, Plaintiff requested review by the Appeals Council of the ALJ's decision.  (Tr. 14).  On March 20, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner, and thus a proper subject of this court's appellate review.  (Tr. 1–3).

## II.     Facts

At the time of the hearing, Plaintiff was 53 years old.  (Tr. 62).  He has a high-school equivalent education.  (Tr. 61, 186).  In addition to his main experience as a welder, Plaintiff's past relevant work included jobs as material handler, millwright, chainsaw operator, and cashier; he was last gainfully employed in 2009.[2]  (Tr. 57–59, 235).  Plaintiff alleges that the following impairments have prevented his employment since May 1, 2009: diabetes mellitus, hypertension, arthritis, degenerative disc disease, scoliosis, and chronic and severe pain.  (Tr. 237; Pl.'s Br. 4).

Plaintiff alleges that he was first diagnosed with diabetes in 2000, and that the impairment causes weight fluctuations, fatigue, and tingling and numbness in his feet and legs. (Pl.'s Mem. 4; Tr. 38-39).  He also experiences numbness in his fingers and hands.  (Tr. 52). Plaintiff states that his diabetic medication, which he takes as prescribed, has side effects that hamper his concentration and judgment, as well as contribute to fatigue and confusion.  (Tr. 39). Plaintiff also asserts that his arthritis of the hip was diagnosed around 2002; the pain it causes impairs his ability to bend, stoop, and crawl; and the medications he takes for it causes similar

---

[2]Though Plaintiff's certified earnings records show income of approximately $300 in 2010, and none since, the ALJ determined that Plaintiff has not been gainfully employed since May 1, 2009.  (Tr. 19, 21, 168–69).

2

side effects to those he attributes to his diabetic medication. (Tr. 39–41). Plaintiff reports taking medication for his scoliosis or degenerative disk disorder of the back, a disorder which he alleges causes him chronic pain. (Tr. 40, 51; Pl.'s Mem. 4). He further reports that he experiences nausea and vomiting ranging from daily to weekly, as well as memory loss. (Tr. 41, 52–53). He reports the ability to stand for up to one and one-half hours before needing a break of 20 to 40 minutes, to walk two blocks before needing a 15-minute rest, and to sit for one to one and one-half hours at a stretch. (Tr. 41–42). Plaintiff alleges difficulties with balance, frequent dropping of objects, and numbness and tingling in his feet requiring him to elevate his legs at least twice daily. (Tr. 42, 48). He reports difficulty reaching in all directions but particularly overhead, due to his scoliosis, arthritis, and associated neck and back pain. (Tr. 50–51). He states that he needs to lie down three to five (and sometimes eight) hours per day in order to relieve the stress on his back, legs, and feet. (Tr. 43). In addition to pain in his legs and feet, Plaintiff also reports pain in his neck and lower back that began around 2002. He states that the pain comes and goes, lasts for 30-45 minutes at a time, is associated with swelling, stiffness, and fatigue. He also contends that on a 1–10 scale (10 being most severe) the pain is 4–5 when on medication and 7–8 without. (Tr. 44–45, 46, 48).

While reporting that his symptoms prevent him from indulging in his favorite pastimes -- such as billiards, ping-pong, and walking his dog -- Plaintiff states that he is able to help with vacuuming, washing dishes, doing laundry, and other household chores, provided that he takes adequate breaks. (Tr. 45–46). He also says he has the ability to drive for up to one hour, and that he tries to avoid situations where he needs to drive long distances. (Tr. 49). Plaintiff reports suffering from depression, for which he takes medication, and which he believes has led to decreased social and family contact in his life. (Tr. 46–47). He states that he has difficulty

remembering, and at times understanding, simple work instructions, that he has problems with focus, and that he believes he could not complete a normal workday or workweek without interruptions from his physical limitations. (Tr. 53–54). Plaintiff reports past recreational cocaine use but states that, at the time of the ALJ hearing, he had not been using it for two months; he also states he never got into trouble with the law over drugs. (Tr. 54–56).

Medical evidence of record shows that Plaintiff first entered into treatment at Cooper Green Mercy Hospital in April 2010.[3] Plaintiff was examined, diagnosed, and treated for hypertension, arthritis, painful limb bilaterally, scoliosis, depression, low back pain, hip pain bilaterally, organic erectile dysfunction, impaired glucose tolerance, and sacroiliitis. (Tr. 262–94). On the basis of Plaintiff's examinations and treatment at Cooper Green over a period of 13 months, from April 2010 to May 2011, Nurse Practitioner Janet McCary, Plaintiff's treating source at Cooper Green Mercy Hospital, completed a Medical Source Statement on June 18, 2011, regarding Plaintiff's impairments and functioning. (Tr. 257–61). The diagnoses listed by McCary were hypertension, diabetes type II, depression, low back pain, bilateral pain in hips and legs, and bilateral foot pain. She stated that the impairments had lasted or were expected to last at least twelve months. (Tr. 257–58). She termed Plaintiff's prognosis "good." (Tr. 257). McCary opined that Plaintiff's pain, which she rated 8 on a 1–10 scale, could not be fully relieved by medication without unacceptable side effects; that over an eight-hour workday he could only sit for 0–2 hours (and it was necessary or medically recommended that he not sit at work), stand or walk for 0–2 hours; and had significant limitations for repetitive reaching,

---

[3] Plaintiff, through his attorney, states that he began this treatment in June 2010. (Tr. 275). However, Nurse Practitioner Janet McCary, of Cooper Green Mercy Hospital, states in her Medical Source Statement, that services began in April 2010, and she also has included a note indicating earlier medical treatment at another facility: "He enter[ed] the clinic A (medicine clinic) initially 4/22/10 [with] his [complaints of] problems. UAB records 10/22/08." (Tr. 260).

handling, or lifting. (Tr. 258). She stated that Plaintiff's condition interferes with his ability to keep his neck in a constant position, and that he could not perform work that required activity on a sustained basis. (Tr. 258–59). As to whether any other limitations would interfere with Plaintiff's capacity for sustained, regular employment, she checked "psychological limitations" only, noting with regard to other possible limitations, "I would not say 'no.' Stooping, pushing, kneeling, and bending would significantly increase his level of pain." (Tr. 259). She stated that emotional factors contributed to the severity of Plaintiff's symptoms. (*Id.*). Regarding whether Plaintiff was malingering, McCary wrote, "Unable to answer; his pain is real; not recommended to treat his pain with the narcotics (Lortab) that patient desires." (*Id.*). She stated Plaintiff was capable of work stress at a low level, explaining, "[Plaintiff] will need to find a job (probably difficult in today's economic climate) with low stress, frequent position changes. Must optimize current [treatment] regimen and function [with] limitations." (*Id.*).

Psychiatrist Samuel D. Williams, M.D., a state agency consultant, completed a Psychiatric Review Technique ("PRT") form for Plaintiff on February 24, 2011, in which he noted the presence of three medically-determinable mental impairments not precisely satisfying the diagnostic criteria for the corresponding Listings, and each based on Plaintiff's primary care records from Cooper Green Mercy Hospital: depression under 12.04 (affective disorders), anxiety under 12.06 (anxiety-related disorders), and history of drug and/or ethyl alcohol abuse under 12.09 (substance addiction disorders). (Tr. 246, 248, 251). Dr. Williams rated Plaintiff's "paragraph B" limitations as mild for activities of daily living, social functioning, and maintaining concentration, persistence, or pace; with regard to extended episodes of decompensation, he indicated there were none. (Tr. 253). Dr. Williams also noted that evidence did not establish the presence of the "paragraph C" criteria. (Tr. 254). In his narrative notes, Dr.

Williams pointed to Plaintiff's ability to cook, clean, drive, go out alone, shop in stores, handle finances, follow instructions, and handle changes in routine, and stated "no significant limitations noted in completing his ADL's." (Tr. 255). He also noted Plaintiff's depression responds well to medication, and that he has no present drug or alcohol problems or legal difficulties from substance abuse. (*Id.*)

On that same date in February 2011, a Physical Residual Functional Capacity Assessment form was completed for Plaintiff by T.M. Knight as Single Decisionmaker ("SDM"). (Tr. 80–86). With regard to exertional limitations, the SDM determined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of 6 hours with normal breaks in an 8-hour workday, sit likewise for a total of 6 hours, and push and/or pull without limitation other than as shown for lift and/or carry. (Tr. 80). With regard to postural limitations, the SDM determined that Plaintiff could occasionally climb ladders, ropes, or scaffolds, and could frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (Tr. 81). No manipulative, visual, or communicative limitations were noted. (Tr. 82–83). With regard to environmental limitations, the SDM determined that Plaintiff could have unlimited exposure to extremes of cold and heat, wetness, humidity, noise, vibration, fumes, gases, and odors, but should avoid all exposure to such hazards as dangerous machinery and unprotected heights. (Tr. 83). In his narrative findings regarding the severity of Plaintiff's alleged symptoms, the SDM concluded that while Plaintiff's medically determinable impairments could be expected to produce some of his symptoms, "the severity alleged is not consistent with the objective findings in [the] file." (Tr. 84).

On June 21, 2012, Dr. Randall DeArment, an osteopathic doctor, wrote a narrative in which he stated his "medical opinion that [Plaintiff] is currently disabled and is expected to be

6

disabled for the next 12 months." (Tr. 295).  Dr. DeArment indicated that drug or alcohol abuse was not a contributing factor material to his disability determination, and that even absent such substance abuse, "[Plaintiff] would still be limited from performing any substantial gainful activity on a sustained basis." (*Id.*).  He added that Plaintiff "needs an updated disability exam to confirm his disability." (*Id.*).

### III.   ALJ Decision

Disability under the Act is determined under a five-step test; a finding at any of these steps that the claimant is, or is not, disabled, concludes the analysis.  20 C.F.R. § 404.1520.  In the first step, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe; this means that the impairment significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*

If an alleged impairment is mental, the second step of the analysis also involves what are known as the "paragraph B" criteria.  20 C.F.R. 404 Subpt. P, App. 1, § 12.00.  The criteria used to determine the severity of a mental impairment are: (1) activities of daily living ("ADL's"); (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  If the "paragraph B" criteria support a severe mental impairment, the analysis moves to step three, where the same criteria are used to determine whether the claimant meets a Listing.  In contrast, if a claimant does not meet the "paragraph B" criteria, the analysis turns to "paragraph C."  20 C.F.R. §§ 404.1520(c), 416.920(c).  The "paragraph C"

criteria involves medically documented history of mental impairment with repeated, extended episodes of decompensation or likelihood of decompensation or inability to function without a highly supportive living arrangement or one's own home.  If the "paragraph C" criteria are not met, claimant cannot claim disability based on that impairment.  If the "paragraph C" criteria are met, the analysis moves to the third step.  20 C.F.R. §§ 404.1520(c), 416.920(c).

In the third step of the analysis, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  If the criteria are not met at this step, the ALJ may still find disability under the next two steps of the analysis.  However, the ALJ must first determine the claimant's residual functional capacity ("RFC"), meaning the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant's RFC enables him to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, or if claimant has no past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the fifth step, the ALJ determines whether the claimant is able to perform any other work that matches his RFC, age, education, and work experience.  At this step, the burden shifts to the Commissioner to prove the existence of significant numbers of jobs in the national economy that the claimant can do given his RFC and other characteristics.  20 C.F.R. §§ 404.1520(g), 404.1560(c).  If the Commissioner proves that other work exists which the claimant can perform, the burden shifts back to the claimant to prove that he cannot, in fact, perform that work.  *See*

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 1, 2009, the amended alleged onset date of disability. Thus, the ALJ determined he met the first step of the analysis. (Tr. 21). At the second step, the ALJ concluded that Plaintiff has five severe impairments: diabetes mellitus, hypertension, arthritis, degenerative disc disease, and scoliosis. (Tr. 21–22). The mental impairments alleged by Plaintiff, depression and history of substance abuse, both singly and in combination, were found by the ALJ to cause minimal limitation, at most, in Plaintiff's ability to perform basic mental work tasks; therefore, the ALJ determined these impairments were not severe. (Tr. 22). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. In making this determination, the ALJ considered the "paragraph B" criteria.[4] (Tr. 22–23). With regard to the four functional areas under "paragraph B," the ALJ determined that Plaintiff had only mild limitation in his activities of daily living: he "cooks, cleans, drives, and goes out alone, . . . [,] shops in stores and can handle his finances." (Tr. 22). Similarly, the ALJ found mild limitation in Plaintiff's social functioning, with Plaintiff reporting getting along well with authorities and the record showing no problems relating to others; Plaintiff's substance abuse has caused no legal or social difficulties. (*Id.*). The ALJ also found mild limitation in concentration, persistence, or pace, noting that the medical records show no more than minimal limitations in concentration, understanding, or following instructions; no evidence of difficulty adapting to

---

[4]The ALJ made no reference to having considered the "paragraph C" criteria. However, the PRT form completed by Samuel D. Williams, M.D. noted that Plaintiff's impairments did not meet the "paragraph C" criteria. (Tr. 254).

9

change; and self-report of completing tasks and following verbal instructions. (*Id.*). The ALJ noted that Plaintiff's depression has responded to medication. (*Id.*). With regard to the fourth functional area, the ALJ determined that Plaintiff has had no extended episodes of decompensation. (*Id.*).

Before moving to the fourth step, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that his diabetes and neuropathy/sensitivity in his legs and feet would limit his ability to walk to 4-6 hours and 50-100 feet at a time; sit for 6-8 hours; lift or carry 10-20 pounds frequently and more weight occasionally; cannot engage in repetitive reaching overhead; no difficulty writing; and should be able to change positions at will. (Tr. 23). The ALJ further determined that Plaintiff needs no assistive devices and that pain or discomfort could be managed with prescribed medication, and noted that her RFC determination for Plaintiff takes into account minimal medication side effects, which do not affect function. (*Id.*). At the fifth step, relying on the Vocational Expert's testimony, the ALJ determined that available employment exists consistent with Plaintiff's RFC—specifically, Plaintiff's past relevant work as a cashier. (Tr. 26). The ALJ qualified this finding by stating that Plaintiff could perform this job as actually and generally performed. (*Id.*).

The ALJ concluded that Plaintiff has not been under a disability as defined in the Act, from May 1, 2009 through August 24, 2012, the date of her decision. (Tr. 27).

## IV.   Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ failed to properly evaluate the opinions of treating sources Dr. DeArment and Nurse Practitioner McCary. (Pl.'s Mem. 8–13). Although Plaintiff has presented his argument in the form of seeking reversal as to a single "substantial evidence" issue,

this court has carefully scrutinized the pleadings and concluded that Plaintiff actually makes two additional arguments. First, Plaintiff argues that the ALJ did not meet her duty to develop the record by failing to order a physical consultative examination ("CE"), noting that such an examination "was specifically suggested by [his] treating physician"[5] in reference to Dr. DeArment. (Pl.'s Mem. 11; Tr. 295). Second, implicit in Plaintiff's reliance on the opinion of McCary is the argument that the ALJ failed to properly credit his testimony in a manner consistent with the Eleventh Circuit pain standard. (Pl.'s Mem. 9).

## V.   Standard of Review

The scope of this court's review is limited to two questions. First, does the record reveal substantial evidence to sustain the ALJ's decision? 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Second, did the ALJ apply the correct legal standards? *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In sum, "[the court] review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'" *Riggs v. Soc. Sec. Admin., Comm'r*, 522 F. App'x 509, 510–11 (11th Cir. 2013) (quoting *Doughty*, 245 F.3d at 1278). While acknowledging the limited scope of judicial review of the ALJ's findings, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

On the first question, 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This is the case even if the evidence preponderates against the findings. *Id.* The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as

---

[5]Plaintiff's attorney's letter dated November 5, 2012 also argued that the ALJ failed to provide a properly supported RFC assessment, and that the ALJ failed to properly consider Plaintiff's impairments in combination. (Tr. 238–40). However, as Plaintiff does not raise these arguments before this court, they are not considered here.

a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is more than a scintilla but may be less than a preponderance of evidence; it is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938)); *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982) (quoting *N.L.R.B. v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 300 (1939)).

In contrast to the factual findings, the court submits the legal standards underlying the Commissioner's decision to review *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Even a determination that is supported by substantial evidence may nevertheless be in error if "coupled with or derived from faulty legal principles." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).

**VI.   Discussion**

    **A.   The ALJ's Decision to Accord Less Weight to the Opinions of Dr. DeArment and Nurse Practitioner McCary Was Not Error.**

Plaintiff contends that the ALJ failed to properly evaluate the opinions of Randall DeArment, D.O. (an osteopathic doctor) and Janet McCary, C.R.P.N. (a certified registered nurse practitioner), and that those opinions in combination with the medical evidence of record warranted a finding of disability by the ALJ. (Pl.'s Mem. 8). Plaintiff argues that "two of Plaintiff's treating sources, Ms. Janet McCary, and Dr. Randall DeArment, have given opinions indicating that Plaintiff is completely disabled from work-related activities." (Pl.'s Mem. 9). The opinion evidence cited is a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment, a five-page form completed and signed by McCary and

dated June 18, 2011; and a medical opinion on a single page, partially typewritten and partially handwritten, signed by Dr. DeArment, dated June 21, 2012.  (Tr. 257–61, 295).

McCary's June 2011 opinion, which covered thirteen months of Plaintiff's treatment from April 2010 through May 2011, included a diagnosis of hypertension, diabetes type II, depression, with low back, bilateral hip and leg, and bilateral foot pain; a prognosis of "good," a pain estimate of 8 on a scale of 0 to 10, with 10 being most severe; an expectation that Plaintiff's impairments had lasted or were expected to last at least twelve months; a negative answer regarding Plaintiff's ability to do a full-time competitive job requiring sustained activity; and the statement "[Plaintiff] will need to find a job (probably difficult in today's economy) [with] low stress, frequent position changes.  Must optimize current [treatment] regimen and function [with] limitations."  (Tr. 257–59).  Dr. DeArment's opinion one year later stated, "It is my opinion that [Plaintiff] is currently disabled and is expected to be disabled for the next 12 months."  (Tr. 295).  Dr. DeArment stated that drug or alcohol abuse were not material, contributing factors to his disability determination, and asserted that Plaintiff had "no known drug or alcohol abuse contributing to his back complaint" while noting "a positive cocaine history in May 2012."  (*Id.*).  Finally, Dr. DeArment stated that Plaintiff "needs an updated disability exam to confirm his disability."  (*Id.*).

With regard to acceptable medical sources, the Social Security Regulations specify that evidence to establish the existence of a medically determinable impairment must come from "licensed physicians (medical or osteopathic doctors)."  20 C.F.R. § 404.1513(a)(1).[6]  A nurse practitioner, while not a valid source to establish an impairment, is a valid source regarding the *severity* of an impairment.  20 C.F.R. § 404.1513(d)(1); *see also King v. Astrue*, 493 F. Supp. 2d

---

[6]Depending on the impairment, duly credentialed psychologists, optometrists, podiatrists, and speech-language pathologists are also acceptable medical sources.  20 C.F.R. § 404.1513(a)(2)–(5).

1232, 1234 (S.D. Ala. 2007). Thus, Dr. DeArment qualifies as an acceptable medical source, while McCary qualifies as a valid source regarding the severity of Plaintiff's impairment.

Plaintiff relies upon Eleventh Circuit case law and points to two legal propositions that he believes inform the review of the ALJ's opinion: (1) in determining disability, a treating physician's opinion must be given substantial weight absent good cause to the contrary, and (2) a physician's opinion merits more credence than that of a non-treating physician. Plaintiff contends that "two of Plaintiff's treating sources, Ms. Janet McCary, and Dr. Randall DeArment, have given opinions indicating that Plaintiff is completely disabled from work-related activities." (Pl.'s Mem. 9). However, for the following reasons, the court concludes Plaintiff's argument does not hold water.

First, the record contains no evidence to support Plaintiff's reference to Dr. DeArment as his treating physician; clinical notes from Cooper Green Mercy Hospital indicate ongoing treatment relationships with Mark Wilson, M.D., Carol Leitner, M.D., Samantha McCaskill, M.D., Jeremy Allen, M.D., Janet McCary, C.R.N.P., and Kelly Watson, C.R.N.P. (Tr. 271–310). However, in testimony, Plaintiff refers to Dr. DeArment as being one of his doctors. (Tr. 50). Dr. DeArment's opinion consists of six sentences, filling less than a quarter page and neither containing nor referring to any clinical findings, examinations, tests, or other medical evidence.

Second, even if Dr. DeArment were deemed Plaintiff's treating physician, it is well-established law in the Eleventh Circuit that such an opinion may be discounted if "it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580 583 (11th Cir. 1991) (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *see also Hudson v. Heckler*, 755 F.2d 781 (11th Cir. 1985) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (treating physician's opinion "may be rejected when it is so

brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.")). Here, Dr. DeArment's opinion that Plaintiff is disabled was stated in a conclusory manner – it neither refers to any specific impairments nor contains any clinical or laboratory findings. (Tr. 295).

Third, Plaintiff's argument that the opinions of Dr. DeArment and McCary warranted a finding by the ALJ of disability is misplaced because the Regulations make plain that opinions by medical sources regarding a claimant's disability, or a claimant's inability to work, are not determinative: "Opinions on some issues . . . are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner. . . . [The Commissioner] is responsible for making the determination about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. §§ 404.1527(d), 404.1527(d)(1), 416.927(d), 416.927(d)(1).

Finally, with regard to the ALJ's assigning less weight to the two source opinions relied on by Plaintiff, a diagnosis does not signify disability. Indeed, "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6.

In sum, substantial evidence supports the ALJ's decision to accord less weight to the opinions of Dr. DeArment and McCary, and the ALJ did not err in so deciding.

> **B.**     **The ALJ Did Not Err in Declining to Order a Physical Consultative Exam as Suggested by Dr. DeArment.**

Plaintiff also argues that the ALJ erred in not ordering a consultative examination, which Dr. DeArment stated in his June 2012 narrative opinion he viewed as necessary. However, an ALJ is required to obtain a consultative examination only in those cases where the record contains insufficient evidence to permit a fully informed decision, or in order to resolve an

inconsistency in the record. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

It is, of course, true that the ALJ has a duty to develop a full and fair record, and "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *See Holladay*, 848 F.2d at 1209. But the threshold consideration before the court, in this regard, is whether additional medical source opinion was required in order for the ALJ to make an informed decision. That is, an ALJ's duty to develop the record does not imply a "require[ment] to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 493 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *see also Good v. Astrue*, 240 F. App'x 399 (11th Cir. 2007) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Moreover, as the Regulations state, before obtaining a consultative examination, the Commissioner "will consider not only existing medical reports, but also the disability interview form containing [claimant's] allegations as well as other pertinent evidence." 20 C.F.R. § 404.1519a(a).

Although Plaintiff correctly states that a consultative examination is normally required if there is a need to resolve some issue of insufficiency in the evidence, that argument does not win the day here for at least one simple, tautological reason: the record contains sufficient evidence to support a determination by the ALJ. Plaintiff's own testimony established his ability to perform household chores – such as washing dishes and vacuuming floors. Plaintiff also admitted he can drive a car, and engage other basic activities. (Tr. 45–46, 49). Thus, there is substantial evidence to support a finding of non-disability on the part of Plaintiff, including McCary's treatment notes of Feb. 7, 2011 and May 9, 2011 (which indicate that Plaintiff's

16

depression was eased by medication, that his hypertension was stable and his diabetes under control). (Tr. 271, 284). The record also contains diagnostic evidence which supports a finding that Plaintiff's impairments were relatively mild. For example, the record contains an imaging report from June 28, 2010 showing "mild degenerative changes" of the lumbosacral spine; an August 11, 2010 bilateral image showing "[n]o significant abnormality in either hip"; and a lumbar spine MRI on November 2, 2010 showing "moderate degeneration of the L4-5 and L5-S1 discs" and no significant deformity of the facets joints. (Tr. 270, 269, 268). Because the record contains sufficient medical and non-medical evidence to permit a determination regarding Plaintiff's disability, the ALJ was not required to order a physical consultative examination of Plaintiff.

      **C.    The ALJ Properly Evaluated the Credibility of Plaintiff's Testimony of Disabling Symptoms Consistent with the Eleventh Circuit Pain Standard.**

Although the argument is not explicitly made or fully developed, Plaintiff at least implicitly argues that the ALJ failed to properly evaluate the credibility of his testimony of disabling symptoms in accordance with the Eleventh Circuit pain standard. (Pl.'s Mem. 9).[7] The court disagrees. An examination of the ALJ's decision and the record shows that the ALJ had a valid basis for finding that Plaintiff's symptoms were not severe to the point of disability.

The Eleventh Circuit pain standard involves two stages of analysis: first, a threshold inquiry and, second, a credibility determination. To get past the first stage, a claimant must present both (1) evidence of an underlying medical condition and (2) objective medical evidence confirming either the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Hand v.*

---

[7] For example, Plaintiff relies upon McCary's opinion about the intensity of his pain and his pain symptoms.

17

*Heckler*, 761 F.2d at 1548 (quoting S. Rep. No. 466 at 24). If the claimant successfully passes the threshold requirement, a presumption of disability is created and the burden effectively shifts to the ALJ to show that the claimant is not disabled. At this point, the ALJ may still discredit a claimant's subjective allegations of disabling pain, but the ALJ "must clearly articulate explicit and adequate reasons for so doing." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt*, 921 F.2d at 1223 (11th Cir. 1991); *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). It is the responsibility of the ALJ to make a determination with regard to the credibility of a claimant's subjective testimony. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988).

Here, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of his pain were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (Tr. 23). The ALJ found that Plaintiff's complaint of severe, disabling neck and back pain were not consistent with his testimony regarding ability to perform household chores and other basic activities, with medical evidence of symptoms responding to medication, and with radiology reports showing only mild or moderate physical abnormalities. (Tr. 45–46, 49, 268–71, 274). In his findings, the ALJ also referenced McCary's statement that she was unable to opine whether Plaintiff was a malingerer, his pain was real, but it was "not recommended to treat his pain with the narcotics . . . that the patient desires." (Tr. 259).

The court finds that substantial evidence supports the ALJ's decision that Plaintiff's pain testimony was less than fully credible. Therefore, Plaintiff's argument on this score does not form a basis for remanding or reversing the ALJ's determination.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in making that determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 21, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE